IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
KEY WEST DIVISION

NEW SOUTH COMMUNICATIONS, INC. )
D/B/A FLORIDA KEYS MEDIA, LLC, )
ROBERT HOLLADAY, in his individual )
capacity, and FLORIDA KEYS )
MEDIA, LLC, )
)
      Plaintiffs, ) CASE NO.: 4:18-cv-10110-JLK
)
v. )
)
HOUSTON CASUALTY COMPANY, )
)
      Defendant. )
_____ )

### ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

JAMES LAWRENCE KING, District Judge.

THIS CAUSE comes before the Court upon Defendant Houston Casualty Company's ("HCC's") Motion for Summary Judgment (the "Motion," ECF No. 36), filed April 15, 2019. The Court is fully briefed on the matter.[1] A hearing was held on the Motion on May 13, 2019. Upon review of the record and careful consideration, the Court finds that the Motion should be granted.

### I.    BACKGROUND

This dispute arises out of a claim under an insurance policy (the "Policy") issued by HCC for property damage to certain insured properties (the "Properties") allegedly caused by Hurricane Irma when it struck the Florida Keys in September 2017 (the "Claim"). HCC issued

---

[1] In support of the Motion, HCC simultaneously filed a Statement of Undisputed Material Facts (the "SUMF") and corresponding affidavit and exhibits. (ECF No. 35.) Plaintiffs filed a Response in Opposition to HCC's Motion and a supporting Statement of Disputed Material Facts (the "RSUMF"), along with affidavits and exhibits, on April 29, 2019. (ECF Nos. 40, 42.) HCC filed a Reply in Support of its Motion, along with an additional exhibit, on May 6, 2019. (ECF No. 47.)

1

the Policy to New South Communications, Inc. ("New South") for the period of February 1, 2017 to February 1, 2018, but a change endorsement amended the Policy to include additional persons and entities as named insureds, including Florida Keys Media, LLC ("Florida Keys") and Robert Holladay ("Holladay"), the owner of Florida Keys and the president and a member of the board of New South. Plaintiffs claim in their Amended Complaint that HCC breached the insurance contract by failing to issue proper payment for the cost to repair the alleged damages and to issue payments as required by the Policy.

This case was originally filed by Plaintiff New South on May 21, 2018, in the Circuit Court of the 16th Judicial Circuit in and for Monroe County, Florida. (ECF No. 1-1.) On July 16, 2018, HCC removed the case based upon the Court's diversity jurisdiction under 28 U.S.C. § 1332. (ECF No. 1.) The Complaint was thereafter amended to add Florida Keys and Holladay as plaintiffs. (ECF No. 19.) The Amended Complaint remains the operative Complaint. Discovery is now complete.

HCC moves for summary judgment for three reasons. First, HCC contends that none of the Plaintiffs has standing to assert the claim for relief made in this action. HCC states that discovery has revealed that New South, the only insured to bring a claim under the Policy for the damage at issue in the Amended Complaint, has no insurable interest in the Properties, which Plaintiffs now admit are all owned or leased by Florida Keys or Holladay, the recently added Plaintiffs to this litigation. Additionally, and notwithstanding the caption of this case, New South and Florida Keys are separate corporations. "Florida Keys Media, LLC" was never a trade name of New South; nor was New South ever doing business as "Florida Keys Media, LLC." Thus, HCC contends that New South cannot have sustained an injury in fact with respect to Properties in which it has no interest, and it cannot recover for any rights allegedly belonging to persons or

entities other than itself. HCC further asserts that Florida Keys and Holladay are likewise disallowed from suing on a claim brought under the Policy by their co-insured. HCC argues that where a plaintiff fails to show that it has standing to bring its case in response to a summary judgment motion, as it states the Plaintiffs have failed to do here, the motion for summary judgment should prevail.

Second, HCC contends that, jurisdictional deficiencies aside, the suit is barred because Plaintiffs failed to comply with conditions precedent to coverage and to filing suit against HCC. Specifically, HCC argues that Plaintiffs neglected their responsibilities that arose under the Policy when, prior to New South's commencement of this lawsuit, HCC offered to pay the full amount of the damages it determined to be covered under the Policy, subject to the execution and return of a sworn proof of loss. HCC asserts that, under the Policy, a signed, sworn proof of loss should have been submitted within sixty days thereafter as a condition precedent to any coverage and to filing any suit against HCC. However, the record shows that none of the Plaintiffs – not New South, Florida Keys, or Holladay – ever submitted a sworn proof of loss to HCC. Instead, New South filed this lawsuit. HCC contends that that the failure to submit a proof of loss bars Plaintiffs from bringing this suit.

Finally, HCC moves for summary judgment on the basis that, even if Plaintiffs had standing and were not otherwise barred from bringing this action, an exclusion in the Policy bars coverage for the alleged damages beyond those for which HCC previously offered payment. Specifically, the Policy excludes coverage for "loss to the interior of buildings or structures or to personal property in the buildings or structures caused by rain, snow, sleet, ice, sand, or dust, unless: entering through openings made by a 'named peril' . . . ." (Policy, ECF No. 40-1, p. 31.) HCC asserts that Plaintiffs have failed to establish that the exception to that exclusion applies to

any specific piece of property included in the Claim aside from those damages HCC acknowledged were potentially caused by rain entering through an opening made by Hurricane Irma. Thus, HCC contends no genuine issue of material fact exists that the exclusion limits recovery.

## II. LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The applicable substantive law will determine what facts are "material," but "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

The party seeking summary judgment bears the initial burden of demonstrating the basis for its motion and "identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (internal quotation marks omitted), *reh'g denied*, 99 F. App'x 889 (11th Cir. 2004). "[W]hile it is true that all reasonable inferences must be drawn in the non-moving party's favor," ultimately, "summary judgment is appropriate against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's

4

case, and on which that party will bear the burden of proof at trial." *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1184 (11th Cir. 2003) (internal quotation marks omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find . . . by a preponderance of the evidence that the plaintiff is entitled to a verdict . . . ." *Anderson*, 477 U.S. at 252. If the evidence offered by the nonmoving party is "merely colorable" or is "not significantly probative," summary judgment is proper. *See id.* at 249-50.

## III.  DISCUSSION

Upon review of the facts and legal arguments, the undersigned finds persuasive and adopts HCC's legal arguments in support of its Motion.

### A.  Standing

#### 1.  New South lacks standing because it has no insurable interest in the Properties.

"[A] party has standing to prosecute a claim in federal court only if he is the 'real party in interest'" to that claim, as required by Federal Rule of Civil Procedure 17(a). *Tribue v. Hough*, No. 3:04CV286/RV/EMT, 2006 WL 212017, at *2 (N.D. Fla. Jan. 26, 2006) (quoting *U.S. v. 936.71 Acres of Land, More or Less, in Brevard Cnty., State of Fla.*, 418 F.2d 551, 556 (5th Cir.[2] 1969)) (citing Fed. R. Civ. P. 17(a) (2019)). "An action brought by the real party in interest is one 'brought by the person who, according to the governing substantive law, is entitled to enforce the right.'" *Payroll Mgmt., Inc. v. Lexington Ins. Co.*, 815 F.3d 1293, 1299 n.10 (11th Cir. 2016)

---

[2] Decisions of the United States Court of Appeals for the Fifth Circuit handed down prior to the close of business on September 30, 1981 are binding as precedent in the Eleventh Circuit, including the district courts therein. *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981).

5

(quoting 6A Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Richard L. Marcus & Adam N. Steinman, *Federal Practice and Procedure* § 1543 (3d ed. 2015).

"[P]roperty insurance contracts are enforceable only where the insured has an insurable interest in the covered property at the time of the loss." *Banta Props., Inc. v. Arch Specialty Ins. Co.*, 553 F. App'x 908, 910 (11th Cir. 2014) (citing Fla. Stat. § 627.405(1) (2019)). Although an insured does not necessarily have to *own* certain property to have an insurable interest therein, it must have "an 'actual, lawful, and substantial economic interest' in keeping the property 'free from loss, destruction, or pecuniary damage or impairment.'" *Id.* (quoting Fla. Stat. § 627.405(2)). "'The measure of an insurable interest in property is the extent to which the insured might be damnified by loss, injury, or impairment thereof.'" *Id.* (quoting Fla. Stat. § 627.405(3)).

The fact that an insurance policy insures multiple, separate insureds along with their respective properties does not give all insureds under the policy an insurable interest in all covered properties where no such interest otherwise exists. *See id.* at 911; *Unijax, Inc. v. Factory Ins. Ass'n*, 328 So. 2d 448, 456 (Fla. 1st DCA 1976), *cert. denied*, 341 So. 2d 1086 (Fla. 1976). Instead, each insured must establish its own rights to recovery under the policy, and it cannot rely on the rights of others. *See Banta*, 553 F. App'x at 911; *Unijax*, 328 So. 2d at 453-54. This is so even when the insureds are related corporate entities, since "[d]ifferent corporations usually are distinct entities in law," and disregarding the separate existence of corporations is only justified where one of the corporations "is a sham, or is used to perpetrate deception to defeat a public policy . . . ." *Unijax*, 328 So. 2d at 452 (internal quotation marks omitted); *see also Banta*, 553 F. App'x at 909, 911. Absent such justification, the "claims of various entities, even though interrelated, must be treated separately, and . . . the rights of each must be maintained in separate actions . . . in accord with Florida law." *Unijax*, 328 So. 2d at 453; *see also Federated Title*

*Insurers, Inc. v. Ward*, 538 So. 2d 890, 891 (Fla. 4th DCA 1989) ("Claims of various entities, even though interrelated, must ordinarily be treated separately.").

At the summary judgment stage, a party "can no longer rest on . . . mere allegations" to demonstrate its standing, "but must set forth by affidavit or other evidence specific facts" establishing standing. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 412 (2013) (internal quotation marks omitted). In this case, it is undisputed between the parties that at all relevant times: New South did not own or lease the Properties at issue; New South and Florida Keys were separate corporations; "Florida Keys Media, LLC" was not a trade name of New South; and New South was not doing business as "Florida Keys Media, LLC." (*See* SUMF, ECF No. 35, ¶¶ 15-17; RSUMF, ECF No. 40, ¶¶ 15-17.) Rather, at all relevant times, the Properties were all owned or leased by Florida Keys or Holladay in his individual capacity. (SUMF, ECF No. 35, ¶ 15; RSUMF, ECF No. 40, ¶ 15.) In an attempt to establish that New South nevertheless had "an actual, lawful, and substantial economic interest" in the Properties, entitling it to sue HCC in connection with the Claim, Plaintiffs contend that New South: (1) is the named insured on the Policy; (2) was required under the language of the Policy to give HCC notice of the Claim; and (3) owned personal property contained within the subject Properties. *See* Fla. Stat. § 627.405(2). (*See also* Pls.' Resp. in Opp'n to Def.'s Mot. for Summ. J., ECF No. 42, p. 2.) The Court finds these arguments to be without merit as respects New South's standing to bring this lawsuit.

First, it is clear from the Policy that New South was not the only named insured thereunder, and that the insurance contract did not mandate that only New South report claims. Indeed, the Policy's notice provision provides:

> **WHAT MUST BE DONE IN CASE OF LOSS**
>
> 1. **Notice** -- In case of a loss, "you" must:

7

  a.  give "us" or "our" agent prompt notice including a description of the property involved ("we" may request written notice) . . . .

(Policy, ECF No. 40-1, p. 32.) The words "you" and "your" are elsewhere defined in the Policy as the "persons or organizations [i.e., plural] named as the insured in the declarations . . . ." (Policy, ECF No. 40-1, p. 20.) Pursuant to the Policy's Change Endorsement #1, the list of named insureds was amended to include Florida Keys and Holladay, among many others. (Policy, ECF No. 40-1, pp. 7-8.) The Court finds, as a matter of law, that the plain meaning of the Policy requires the insureds that suffered damage to provide notice thereof to HCC. Again, each insured must establish its own rights to recovery under a policy; it cannot rely on the rights of others. *See Banta*, 553 F. App'x at 911; *Unijax*, 328 So. 2d at 453-54.

  Plaintiffs' allegation that the Policy shows that New South owns personal property contained within the Properties, and therefore has standing, is likewise without merit. In support of this argument, Plaintiffs rely on an endorsement issued *after* the Hurricane that says no such thing. (Policy, ECF No. 40-1, p. 57.) Rather, the endorsement, Change Endorsement #10, states only that $4,000 worth of contents at one of the Properties was moved to another temporary location, without identifying the owner of the contents. (Policy, ECF No. 40-1, p. 57.) Further, Plaintiffs have presented no proof that the personal property identified in Change Endorsement #10 was even damaged or included in the Claim. Thus, even if New South owned that personal property, Plaintiffs have failed to show that New South suffered any injury in fact with respect to it. New South has thus failed to demonstrate its standing.

### 2. Florida Keys and Holladay lack standing because they never submitted a claim under the Policy for the damages at issue.

Florida Keys and Holladay are similarly barred from suing HCC in connection with the damages at issue here. An insured has no standing to sue for coverage under a policy if it never made a claim for coverage thereunder in the first place, irrespective of whether its co-insured made such a claim. *See Payroll*, 815 F.3d at 1299; *G & S Holdings, LLC v. Continental Cas. Co.*, No. 3:09-CV-00592 JD, 2011 WL 855345, at *8 (N.D. Ind. Mar. 8, 2011), *aff'd*, 697 F.3d 534 (7th Cir. 2012); *Vectren Energy Mktg. & Serv., Inc. v. Exec. Risk Specialty Ins. Co.*, 875 N.E.2d 774, 777-78 (Ind. Ct. App. 2007) (holding insurance policy creates distinct contractual duties between insurer and every named insured).

Here, the record is devoid of evidence showing that either Florida Keys or Holladay ever submitted a claim to HCC in their own right. In an attempt to nonetheless support their standing, Plaintiffs allege that that HCC was aware of Holladay's involvement "from the outset of the [C]laim" and that New South reported the Claim on behalf of all named insureds under the Policy. (RSUMF, ECF No. 40, ¶¶ 6-7, 11-13, 18.) However, Plaintiffs cite no evidence of record to show that New South provided notice on behalf of all named insureds, other than an unpersuasive interrogatory answer submitted *after* HCC raised the lack of insurable interest issue in its Answer and Affirmative Defenses to the Complaint. (*See* RSUMF, ECF No. 40, ¶ 6; Def.'s Answer and Affirmative Defenses to Pls.' Am. Compl., ECF No. 23, p. 10.) Moreover, the interrogatory answer is itself unsupported by any evidence that New South's alleged intent was disclosed to HCC. (*See* RSUMF ¶ 6 (citing New South's Verified Answers to Def.'s Second Continuing Interrogs., ECF No. 40-3, p. 5).)

Plaintiffs likewise have failed to produce evidence that Holladay submitted a claim either on behalf of Florida Keys or in his individual capacity. HCC acknowledges that Holladay was

9

involved in the presentation of New South's claim. Indeed, as its president and a member of its board of directors, he would logically be involved in an insurance claim made by and on behalf of New South alone. (*See* RSUMF, ECF No. 40, ¶ 4; Aff. of Robert Holladay, ECF No. 40-2, ¶ 4.) However, New South and Florida Keys are separate entities, and there are no facts to show that Holladay submitted a claim on behalf of Florida Keys, much less in his individual capacity. (*See* Def.'s Mot. for Summ. J., ECF No. 36, pp. 8-12; RSUMF, ECF No. 40, ¶¶ 16-17.) *See also Riggins v. Polk Cnty.*, 602 F. App'x 765, 766-68 (11th Cir. 2015) (president and major shareholder of corporation lacked standing to sue in corporation's name in connection with bid awarded to second-lowest bidder rather than plaintiff's corporation, where correspondence indicated that plaintiff was acting in his capacity as officer of corporation and not in his personal capacity, and he thus could not demonstrate injury particularized to him, distinct from injury to corporation).

Based on the record, the Court finds that Plaintiffs have failed to come forth with any evidence that the Claim was in fact made on behalf of any person or entity other than New South. Therefore, Florida Keys and Holladay lack standing to sue in connection with the Claim.

### B. Proof of Loss Requirement

Even if any of the Plaintiffs had standing to maintain this action, prosecution of this suit would be barred for the insureds' failure to comply with conditions precedent to coverage and to filing suit against HCC – specifically, the submission of a signed and sworn proof of loss as required by the Policy.

Prior to New South's filing of this lawsuit, HCC offered to pay the full amount of the damages it determined to be covered, subject to the execution and return of a sworn proof of loss. To this end, on April 25, 2018, Julio Vistoso ("Vistoso") of McLarens, the independent

10

adjusting firm that investigated the Claim on behalf of HCC, sent Kevin Downs ("Downs") of Five Star Claims Adjusting, the public adjusting firm representing New South, a proof of loss for the insured to sign before a notary public and return to Vistoso. (*See* SUMF, ECF No. 35, ¶¶ 23-24, 37.) Vistoso's email to Downs also included a statement of loss setting forth, *inter alia*, the actual cash value of the damages HCC determined to be covered after application of the Policy's deductible, which totaled $52,217.14. (*See* Apr. 25, 2018 email from Vistoso to Downs and attachments, ECF No. 40-2, pp. 68, 76-77.)

The Policy expressly required the insured to submit a signed, sworn proof of loss within sixty days after the insurer's request as a condition precedent to coverage and to filing suit against HCC. The Policy's Proof of Loss provision states:

**WHAT MUST BE DONE IN CASE OF LOSS**

. . .

3. **Proof Of Loss** – "You" must send "us", within 60 days after "our" request, a signed, sworn proof of loss. This must include the following information:

   a. the time, place, and circumstances of the loss;

   b. other policies of insurance that may cover the loss;

   c. "your" interest and the interests of all others in the property involved, including all mortgages and liens;

   d. changes in title of the covered property during the policy period; and

   e. estimates, specifications, inventories, and other reasonable information that "we" may require to settle the loss.

(Policy, ECF No. 40-1, p. 33.)

11

Similarly, the Policy's Loss Payment provision provides:

**LOSS PAYMENT**

. . .

2.  **Your Losses –**

    . . .

    b.  **Conditions For Payment Of Loss** -- An insured loss will be payable 30 days after:

        1)  a satisfactory proof of loss is received; and

        2)  the amount of the loss has been established either by written agreement with "you" or the filing of an appraisal award with "us".

(Policy, ECF No. 40-1, p. 35.)

Finally, the Policy's Suit Against Us provision states:

**OTHER CONDITIONS**

. . .

10. **Suit Against Us** -- No one may bring a legal action against "us" under this coverage unless:

    a.  all of the "terms" of this coverage have been complied with; and

    b.  the suit has been brought within three years after "you" first have knowledge of the loss.

(Policy, ECF No. 40-1, p. 36.)

Plaintiffs do not dispute that the Policy contains the foregoing language, and it is similarly undisputed between the parties that New South, Florida Keys, and Holladay never submitted a signed and sworn proof of loss to HCC. (*See* SUMF, ECF No. 35, ¶¶ 39-42.) Rather, Plaintiffs contend that HCC never made a "legitimate" request for a proof of loss and that HCC waived the requirement of a proof of loss because it "admitted liability in an unagreed to

12

amount." (*See* RSUMF, ECF No. 40, ¶¶ 39-41; Opp'n, ECF No. 42, p. 7.) Plaintiffs alternatively contend that New South's notice of the Claim constituted a proof of loss and that the insurer failed to establish that it was prejudiced by the absence of a proof of loss. (*See* Opp'n, ECF No. 42, pp. 7-8.) However, the Court finds that HCC requested a proof of loss, and that Plaintiffs' arguments attempting to justify their failure to submit a proof of loss before filing suit are contrary to applicable law.

Plaintiffs cite *Allstate Floridian Insurance Co. v. Farmer*, 104 So. 3d 1242 (Fla. 5th DCA 2012) for the proposition that an insurer must show prejudice in order to disclaim coverage based on an insured's failure to provide a proof of loss. (*See* Opp'n, ECF No. 42, pp. 7-8.) In *Farmer*, Florida's Fifth District Court of Appeal held that, where an insured failed to submit a sworn proof of loss before filing suit, it was permissible for the trial court to allow the insured to show the insurer was not prejudiced by the insured's failure to provide a proof of loss, meaning the insured could rebut the presumption of prejudice to the insurer. 104 So. 3d at 1250. This Court, however, must look to the decisions of the Florida appellate court that would have had jurisdiction over the appeal had the case remained in state court. *Bravo v. U.S.*, 532 F.3d 1154, 1165-66 (11th Cir. 2008); *see also Welford v. Liberty Mut. Ins. Co.*, 713 F. App'x 969, 973 n.8 (11th Cir. 2017); *Inlet Condo. Ass'n v. Childress Duffy, Ltd.*, 615 F. App'x 533, 539-40 (11th Cir. 2015). Thus, because this case was originally filed in the Circuit Court of the 16th Judicial Circuit in and for Monroe County, Florida, the Court must look to decisions of Florida's Third District Court of Appeal. *See* Jon S. Wheeler et al., *Internal Organization of the Dist. Cts. of App.*, APP FL-CLE 5-1 § 5.5 (2017) (stating the Third District has jurisdiction over appeals from the 16th Circuit).

13

The Third District, like the Fourth District Court of Appeal, has recognized that "'[i]t is well settled in Florida that submission of a sworn proof of loss when required by an insurance policy is a condition precedent to coverage.'" *See Reddy v. State Farm Fla. Ins. Co.*, 207 So. 3d 338, 338 (Fla. 3d DCA 2016) (quoting *Hunt v. State Farm Fla. Ins. Co.*, 145 So. 3d 210, 211 (Fla. 4th DCA 2014) and collecting other cases). "'If the insured fails to comply with a condition precedent before filing suit, its breach is deemed material, and thus the insurer is relieved of its duties under the policy[.]'" *Id.* (quoting *Hunt*, 145 So. 3d at 211); *see also State Farm Ins. Co. v. Laughlin-Alfonso*, 118 So. 3d 314, 315 (Fla. 3d DCA 2013), *review dismissed*, 126 So. 3d 1057 (Fla. 2013); *Gonzalez v. State Farm Fla. Ins. Co.*, 65 So. 3d 608, 609 (Fla. 3d DCA 2011); *Edwards v. State Farm Fla. Ins. Co.*, 64 So. 3d 730, 732-33 (Fla. 3d DCA 2011). This is so regardless of whether the insurer was prejudiced by the insured's breach of the policy's condition precedent. *See Hunt*, 145 So. 3d at 211-12 (affirming summary judgment for insurer based on the insureds' failure to comply with proof of loss requirement before filing suit); *Rodrigo v. State Farm Fla. Ins. Co.*, 144 So. 3d 690, 692-93 (Fla. 4th DCA 2014) (trial court properly entered summary judgment for insurer due to insured's failure to provide a proof of loss prior to filing suit; no showing of prejudice was required).

In this regard, the Court notes that Plaintiffs' reliance on *State Farm Mutual Automobile Insurance Co v. Curran*, 135 So. 3d 1071 (Fla. 2014) is also misplaced. Plaintiffs cite *Curran* for the proposition that the burden of proof is on HCC to show that it was prejudiced by their failure to submit a proof of loss. (*See* Opp'n, ECF No. 42, p. 7.) However, *Curran* involved a compulsory medical examination for uninsured motorist coverage—a requirement the court held not to be a condition precedent to suit. *Curran*, 135 So. 3d at 1079. Courts have declined to find *Curran* instructive in proof of loss cases. *See Hunt,* 145 So. 3d at 212 (holding *Curran* was not

14

instructive where issue was insured's failure to comply with proof of loss requirement, a condition *precedent* to coverage, since *Curran* "clarified the standards applicable to an insured's breach of a condition *subsequent* to coverage") (emphasis added); *Rodrigo*, 144 So. 3d at 692 (rejecting argument that *Curran* rendered sworn proof of loss a condition subsequent rather than condition precedent, since *Curran* "limited its rationale and holding to the unique subject of uninsured motorist coverage and compulsory medical exams").

Plaintiffs' waiver argument must also be rejected. HCC did not waive the proof of loss requirement by admitting liability for the undisputed portion of the Claim. In *Rodrigo, supra*, the insured refused tender of the undisputed portion of a claim, electing instead to file suit (like Plaintiffs here), alleging the insurer failed to pay her the necessary amount to repair her property. 144 So. 3d at 691. The court held the insurer did not waive the proof of loss requirement by tendering payment because "'[i]nvestigating any loss or claim under any policy or *engaging in negotiations looking toward a possible settlement* of any such loss or claim' does not constitute a waiver of a 'sworn proof of loss' requirement." *Id.* at 692 (quoting Fla. Stat. § 627.426(1)(c) (2007)).

Here, the facts show that the Policy required, as a condition precedent to coverage and to filing suit against HCC, that the insured send, within sixty days of the insurer's request, a signed, sworn proof of loss. HCC made the request. The insureds failed to submit a proof of loss prior to filing the instant lawsuit. This breach of the Policy conditions was material, and HCC is thus relieved of its duties under the Policy in connection with the Claim. And, contrary to Plaintiffs' assertion, informal compliance with the Policy's notice requirement is insufficient; rather, an insured must completely satisfy the proof of loss requirements, including the requirement that the statement be signed and sworn. *See Rodrigo*, 144 So. 3d at 693 ("While the insured argued that

15

she provided the insurer with bills, estimates, invoices, and other documents to prove her damages, she failed to file a *sworn proof of loss*. Therefore, the insured materially breached a condition precedent, and the insurer was not obligated to pay."); *Starling v. Allstate Floridian Ins. Co.*, 956 So. 2d 511, 512-14 (Fla. 5th DCA 2007) (rejecting substantial compliance argument where the insured submitted un-notarized and incomplete proof of loss prior to filing suit).

### C. Interior of Buildings Limitation

HCC's final argument in the Motion concerns the Policy's Interior of Buildings Limitation. This provision states:

**ADDITIONAL PROPERTY NOT COVERED OR SUBJECT TO LIMITATIONS**

. . .

3. **Interior of Buildings** -- "We" do not cover loss to the interior of buildings or structures or to personal property in the buildings or structures caused by rain, snow, sleet, ice, sand, or dust, unless: entering through openings made by a "named peril"; or the loss is caused by the thawing of snow, sleet, or ice on the building or structure.

(Policy, ECF No. 40-1, p. 31.) The Policy defines "named perils" to include "windstorm," which encompasses Hurricane Irma. (Policy, ECF No. 40-1, p. 38.)

HCC asserts that, even if Plaintiffs had standing and were not otherwise barred from bringing this suit for the reasons discussed above, the Interior of Buildings Limitation bars coverage for any damages beyond those HCC previously acknowledged were covered. HCC further contends that, to avoid application of the Interior of Buildings Limitation, Plaintiffs bear the burden of proving that the exception to the exclusion applies; that is, Plaintiffs must identify items of damages caused by rain entering through an opening made by the Hurricane, other than the damages that HCC acknowledged were covered.

16

As an initial matter, the Court finds as a matter of law that the Interior of Buildings Limitation is unambiguous, and the Court must therefore construe the provision as written. *See Mock v. Central Mut. Ins. Co.*, 158 F. Supp. 3d 1332, 1341 (S.D. Ga. 2016) (finding that a virtually identical policy provision was "clear and unambiguous"). The record shows that rain was a cause of some interior damage, therefore triggering the application of the Interior of Buildings Limitation. (*See* SUMF, ECF No. 35, ¶¶ 27-30.) Thus, the Court finds that the limitation applies. The Court further finds that the insured bears the burden of proving the exception to the provision applies. *See E. Fla. Hauling, Inc. v. Lexington Ins. Co.*, 913 So. 2d 673, 678 (Fla. 3d DCA 2005) (once an insurer has shown that an exclusion applies to a covered claim, the burden shifts to the insured to show that an exception to the exclusion applies in order to avoid application of the exclusion).

Here, Plaintiffs have not met their burden of proof in this regard. The Court finds, as a matter of law, that Plaintiffs have not shown that the exception to the exclusion applies, since they have failed to come forward with evidence of any specific interior damage caused by rain entering through any openings made by Hurricane Irma, other than those areas that HCC identified as covered and included in its statement of loss. The adjusted amount of the Claim as limited by the Interior of Buildings Limitation – to which the insureds never replied – therefore stands as a proper amount.

Accordingly, upon a careful review of the record and the Court being otherwise fully advised, the Court concludes that no genuine issue of material fact exists and HCC is entitled to final summary judgment. It is **ORDERED, ADJUDGED, and DECREED** that Defendant's Motion for Summary Judgment (ECF No. 36) be, and the same is, hereby **GRANTED** and this case **DISMISSED WITH PREJUDICE**. All pending matters, including Plaintiffs' Daubert

Motion to Exclude Testimony of Defense Expert, Travis VanFossen (ECF No. 31); HCC's Partially Unopposed Motion in Limine to Preclude Evidence of or References to Bad Faith, Claims Handling or Settlement Practices, and Any Request for Punitive Damages (ECF No. 32); HCC's Daubert Motion to Exclude Testimony of Kathleen Banach (ECF No. 33); and HCC's Motion in Limine to Exclude Certain Testimony by Plaintiffs' Proffered Expert Alfredo Brizuela (ECF No. 34), be, and the same are, hereby **DENIED as moot.** The Clerk of Court **SHALL CLOSE** this case.

**DONE and ORDERED** in Chambers at the James Lawrence King Federal Justice Building and United States Courthouse in Miami, Florida, on this 13th day of June, 2019.

JAMES LAWRENCE KING
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF FLORIDA

Copies furnished to:

Taylor L. Davis
CLYDE & CO US LLP
271 17th Street NW, Suite 1720
Atlanta, GA 30363

Alfred C. Warrington, V
CLYDE& CO US LLP
1221 Brickell Avenue, Suite 1600
Miami, FL 33131

Matthew G. Struble
Christine Marie Deis
STRUBLE, P.A.
101 Northeast Third Avenue, Suite 1110
Fort Lauderdale, FL 33301